UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ZAKKIYYAH ABDULLAH HOLLIMAN,

                Plaintiff,

       -against-

ASA COLLEGE, INC., *et al.*,

                Defendants.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
23 CV 2340 (OEM) (CLP)

**POLLAK**, United States Magistrate Judge:

On March 27, 2023, plaintiff Zakkiyyah Abdullah Holliman commenced this action

against defendants ASA College, Inc. ("ASA"), Duwayne Carthan ("Carthan"), and Alex

Shchegol ("Shchegol"), alleging claims of discrimination on the basis of sex and gender, sexual

harassment, and retaliation, in violation of Title IX of the Education Amendments of 1972, 20

U.S.C. §§ 1681 *et seq.* ("Title IX"), the New York State Human Rights Law, N.Y. Exec. L. §§

290 *et seq.* ("NYSHRL"), and the New York City Administrative Code, §§ 8-101 *et seq.* (ECF

No. 1). In her Amended Complaint, filed on April 18, 2023, plaintiff added analogous claims

against the corporate defendant ASA, pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e, *et seq.* ("Title VII"). (ECF No. 6).

When defendants failed to file an Answer or otherwise respond to the Complaint, the

Clerk of Court entered a default against defendants ASA and Carthan on June 29, 2023, and

against defendant Shchegol on October 11, 2023. On December 7, 2023, plaintiff filed a Motion

for Default Judgment against all defendants. (ECF No. 23). The Honorable Orelia E. Merchant

referred the Motion to the undersigned. (Electronic Order, dated December 8, 2023). On

February 1, 2024, defendants ASA and Shchegol filed a Cross Motion, seeking to vacate the

default against both defendants, dismiss the claims against defendant Shchegol for lack of proper

service, and requesting leave for both defendants to file an Answer or otherwise respond to the Complaint.  (ECF No. 27).

Having considered the parties' submissions, the Court respectfully recommends that defendants' Motion to vacate the default be granted; defendants' Motion to dismiss the Complaint as to defendant Shchegol be denied; and plaintiff's Motion for default judgment against defendants ASA and Shchegol be denied without prejudice.  As for plaintiff's Motion for default judgment against defendant Carthan, although defendant Carthan has failed to appear and failed to respond to the Motion for default judgment, the Court respectfully recommends that the Motion should be denied until plaintiff's claims against defendants ASA and Shchegol are resolved and plaintiff files an amended pleading clarifying whether references to "DJ" are intended to refer to defendant Carthan or some other individual.  (See infra n.3).

<u>FACTUAL BACKGROUND</u>

In her Amended Complaint, plaintiff alleges that defendant ASA is a private for-profit college offering bachelor's degrees, associate's degrees, and professional certificates in business administration, health disciplines, legal studies, and computer technology.  (Am. Compl.[1] ¶ 12). ASA has three campuses:  one in Midtown Manhattan, one in Downtown Brooklyn, and one in Hialeah, Florida.  (Id.)  Beginning on or about August 21, 2007, plaintiff was employed by defendants ASA and Shchegol, with the job title of Financial Aid Advisor.  (Id. ¶¶ 9, 10, 47). Plaintiff alleges that Shchegol owns and operates ASA, with the authority to hire and fire, demote, promote, and discipline plaintiff, determine her pay rate and control her employment records.  (Id. ¶¶ 16, 29-30).  Plaintiff further alleges that defendant Carthan was and still is the

---

[1] Citations to "Am. Compl." refer to plaintiff's Amended Complaint, filed April 18, 2023 (ECF No. 6).

director of outreach at ASA, who also had the authority to hire, fire, demote, promote, and discipline plaintiff.  (Id. ¶¶ 18, 26-28).

According to plaintiff, when she was initially hired to work for ASA, she was assigned to the Manhattan Campus, receiving a salary of $54,340.00.[2]  (Id. ¶¶ 48, 51).  In or around 2011, plaintiff was transferred to the Brooklyn Campus, located at 151 Lawrence Street, Brooklyn, New York 11201. (Id. ¶¶19, 52).  Plaintiff alleges that shortly after her transfer to the Brooklyn Campus, defendant Carthan began making sexual remarks to plaintiff and touching plaintiff's cheeks several times a week.  (Id. ¶ 52).  She further alleges that he would make comments about her breasts, stand over her at her desk and try to put his hand down her shirt, and discuss his sexual activities with other women.  (Id. ¶¶ 53-54).

According to plaintiff, beginning in 2011 and continuing through 2018, defendant Carthan told plaintiff about having had intercourse with staff members and students, and he would sexually harass plaintiff's co-workers, including having a relationship with a front desk receptionist, "Jennifer," who Carthan[3] would take to the basement on occasion for sex.  (Id. ¶¶ 55-57).  Plaintiff alleges that she and other colleagues complained to Victoria Shtamler, who plaintiff alleges was her boss, but Shtamler took no action. (Id. ¶¶ 36, 42, 57).

Plaintiff alleges that in or around 2018, Jennifer reported Carthan to the human resources department, and he was forced to resign.  (Id. ¶ 62).  Despite knowing about the harassment of

---

[2] Plaintiff states that her salary was decreased to $50,700.00 in or around 2016 but does not appear to allege retaliation based on the salary reduction.  (Am. Compl. ¶ 49).

[3] In the Amended Complaint, plaintiff refers to defendant Duwayne Carthan by his initials ("DC").  (Am. Compl. ¶ 17).  However, beginning in paragraph 57 and on, plaintiff refers to an individual named "DJ."  Nowhere does plaintiff identify a separate individual with the initials "DJ" and, within the context of the specific allegations, it appears that plaintiff is referring to "DC."  Since the issue of defendant Carthan's liability hinges on the allegations of misconduct set forth in the Complaint, the Court declines to make a determination on plaintiff's Motion for default judgment against Carthan, until plaintiff clarifies that all references in the Complaint to "DJ" actually refer to Duwayne Carthan.

Jennifer and other employees, defendant Shchegol[4] rehired Carthan in or around October of 2021.  (Id. ¶ 63).  Plaintiff further alleges that approximately a month after his return, defendant Carthan began making sexual comments to plaintiff, causing plaintiff to try to keep her distance from him.  (Id. ¶ 65).  She claims that "[t]his was becoming exhausting."  (Id.)  She began asking to work from home to minimize contact with him, noting that two or three times a week, he would make sexual comments about plaintiff and try to show her pictures of other women from his phone.  (Id.)  The Amended Complaint contains other examples of specific conduct by defendant Carthan in April and May of 2022.  (Id. ¶¶ 66-69).  In May of 2022, plaintiff alleges that defendant Carthan backed her into a corner and tried to feel her up, but she "fought him off." (Id. ¶ 70).

Plaintiff alleges that after she rejected Carthan's advances, he began making comments, suggesting that plaintiff was a "disgruntled employee."  (Id. ¶ 71).  Nevertheless, Carthan continued his unwanted advances in June of 2022, suggesting that they go upstairs to a room in the building to which he had a key, and trying to kiss plaintiff in front of a student on or about June 15, 2022, telling the student that plaintiff was "'like a sister to [him].'"  (Id. ¶¶ 72, 73). Following these incidents, plaintiff requested permission from her supervisor, Shtamler, to work from home that Friday, claiming that she had a doctor's appointment, but really needing time to think about how to approach the situation with defendant Carthan.  (Id. ¶ 74).  Although her supervisor gave her permission, when plaintiff returned to work on or about June 20, 2022, she

---

[4] The Amended Complaint appears to allege that defendant Shchegol, defined by plaintiff as "ALEX," resigned his post, but it is unclear whether plaintiff was referring to Shchegol or Carthan. (See Am. Compl. ¶ 64 (alleging: "Upon information and belief and as per the media organizations, ALEX, 'accused of using his perch to sexually abuse vulnerable students has resigned from his post for the second time in the last four years following a Daily News expose'")).

was told that Carthan had filed a formal complaint about plaintiff working from home, which plaintiff alleges was retaliation. (Id. ¶ 75).

On or about June 20, 2022, plaintiff complained to her manager, Shtamler, reporting defendant Carthan for sexual harassment and explaining that he was making complaints about plaintiff as a "cover up." (Id. ¶ 77). Plaintiff explained that the misconduct had been occurring since before defendant Carthan had resigned in 2018, and that she knew that Shtamler had witnessed it. (Id.) Shtamler denied witnessing any sexual harassment but agreed that plaintiff should go to the human resources department. (Id.) Plaintiff alleges that shortly after leaving Shtamler's office at 6:00 p.m., defendant Carthan called and texted plaintiff's phone repeatedly. (Id. ¶ 78).

That same night, plaintiff sent a complaint to the human resources department, and an appointment was set for June 29, 2022. (Id. ¶ 79). Plaintiff alleges that she spoke to the Title IX coordinator, and reported several of the incidents with Carthan, but the coordinator repeatedly advised plaintiff that she could withdraw her complaint at any time, which plaintiff alleges was an attempt to discourage plaintiff from proceeding forward with her complaint. (Id. ¶ 80).

On July 1, 2022, plaintiff returned to the office and was told that there would be a "no contact order" with defendant Carthan effective that night. (Id. ¶ 81). Plaintiff advised the human resources department that she did not feel comfortable being in the office with Carthan and she asked to work from home, a request that was denied. (Id. ¶ 82). Plaintiff was told that Carthan had been assigned to work out of the Manhattan Campus, but plaintiff subsequently learned that he was still in Brooklyn. (Id.) Plaintiff then brought suit, alleging that defendants ASA and Shchegol failed to take the necessary precautions to prevent defendant Carthan's sexual harassment, then retaliated against plaintiff for complaining. (Id. ¶¶ 84, 87). Plaintiff

claims that she was humiliated, degraded, embarrassed, victimized, and emotionally distressed (id. ¶ 88), and she brings claims of discrimination under State and City law (First through Fifth Causes of Action); a claim of sexual harassment/hostile work environment under Title IX (Sixth Cause of Action); and claims of discrimination against the corporate defendant ASA under Title VII (Seventh and Eighth Causes of Action). (Id. ¶¶ 95-124).

## MOTION TO VACATE BY DEFENDANTS ASA AND SHCHEGOL

Following the filing of plaintiff's Motion for default judgment on December 7, 2023, defendants ASA and Shchegol filed a Cross Motion on February 1, 2024 to vacate the previously entered default, dismiss the claims against defendant Shchegol, and requested leave to Answer the Complaint. With respect to defendant Shchegol, defendants argue that he was not properly served, and, in any event, they contend that neither defendant willfully or intentionally defaulted and they have a meritorious defense to the claims. With respect to defendant ASA, defendants argue that despite being served pursuant to the New York Business Corporation Law, ASA did not receive notice of the lawsuit. Since defendants have moved to vacate the previously entered default, the Court addresses the Motion to vacate before turning to plaintiff's Motion for default judgment.

I. <u>Sufficiency of Service</u>

Acting on behalf of himself and defendant ASA, of which he claims to be the sole shareholder, defendant Shchegol has submitted an Affidavit, in which he seeks to vacate the default, claiming that he was not properly served and that ASA, although served pursuant to service upon the Secretary of State, was no longer in operation and therefore had no access to the

address at which service would have been sent.  (Shchegol Aff.[5] ¶¶ 1, 3-8, 9-10).  Accordingly, defendants assert that the Court lacks personal jurisdiction over them.

     A.  Legal Standard

Personal jurisdiction is a necessary prerequisite to entry of a default judgment.  If a defendant does not receive service in compliance with Rule 4 of the Federal Rules of Civil Procedure and does not waive formal service, the court lacks personal jurisdiction over the defendant.  See Martin v. New York State Dep't of Mental Hygiene, 588 F.2d 371, 373 (2d Cir. 1978); see also Michaelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 709 F. Supp. 1279, 1282 (S.D.N.Y. 1989) (stating that proper service on a defendant of a summons and complaint is a prerequisite to personal jurisdiction).

Rule 4 of the Federal Rules of Civil Procedure prescribes the manner in which service of process must be effectuated in order to subject a defendant to the court's jurisdiction.  See Fed. R. Civ. P. 4.  Thus, it is well established that failure to adequately prove proper service of court documents under Rule 4 bars the entry of a default judgment.  See, e.g., Orellana v. World Courier, Inc., No. 09 CV 576, 2010 WL 3861002, at *2 (E.D.N.Y. Aug. 24, 2010) (denying motion for default judgment against a defendant for whom plaintiff had not adequately proved service); Cowder v. Administration for Children & Families, No. 09 CV 628, 2010 WL 723440, at *2 (E.D.N.Y. Mar. 1, 2010) (denying motion for default judgment where service had not been properly effected); Llaviganay v. Cipriani 110 LLC, No. 09 CV 737, 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009) (noting that inadequate proof of service bars entry of default judgment).

---

[5] Citations to "Shchegol Aff." refer to the Affidavit of Alex Shchegol, filed February 1, 2024 (ECF No. 27-1).

Rule 4 provides, however, that service may also be effected by "following state law . . . [of] the state where the district court is located." Fed. R. Civ. P. 4(e)(1). Thus, in this case, service under Rule 4 may also be deemed proper if plaintiff has complied with New York State law. Since defendants ASA and Shchegol have not indicated any intention to waive service, the issue is whether all necessary documents have been served in compliance with the requirements of Rule 4 or New York law.

Under the Federal Rules of Civil Procedure, a natural person may be served by "leaving a copy of the [pleadings] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(1), (2)(B). New York law provides for service upon an individual by delivering the summons and complaint to "a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode . . .," to be followed by mailing a copy to the individual's "last known residence." N.Y. C.P.L.R. § 308(2) (McKinney 1994).

According to Rule 4, "[u]nless federal law provides otherwise or the defendant's waiver has been filed, a domestic . . . corporation . . . [can] be served . . . in a judicial district of the United States . . . by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires – by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B).

Section 306 of the New York Business Corporation Law provides that:

> service of process on the secretary of state as agent of a domestic or authorized foreign corporation shall be made [by]. . . personally delivering [all necessary documents] to . . . the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the

> city of Albany . . . .  Service of process on such corporation shall
> be complete when the secretary of state is so served.

N.Y. Bus. Corp. Law § 306(b)(1)(i) (McKinney 2023).  Thus, a corporation registered to do

business in New York may be served by proper service upon the Secretary of State of New York.

The technical requirements of Rule 4, Section 306, and Section 308 notwithstanding,

courts have recognized that the fundamental purpose of service is to give a defendant notice of

the claims against them; due process requires that service be "reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections." DPWN Holdings (USA), Inc. v. United Air Lines, 871

F. Supp. 2d 143, 154 (E.D.N.Y. 2012) (citing Mullane v. Central Hanover Bank & Trust Co.,

339 U.S. 306, 314, 70 S. Ct. 652 (1950)).  At its core, this standard is one of reasonableness.  Id.

Thus, courts will deem valid efforts to serve outside the bounds of Rule 4 where a defendant has

"actual notice" of the documents mailed.  See, e.g., Burda Media, Inc. v. Blumenberg, No. 97

CV 7167, 2004 WL 1110419, at *6-7 (S.D.N.Y. May 18, 2004) (finding defendant could not

void default because plaintiff made a good faith effort to serve the defendant and the defendant

received actual notice despite any "technical defect" in service) (internal citations omitted).

B. Analysis

In moving to vacate the default, defendants contend that they were not properly served

and did not receive actual notice of the lawsuit until May 2023.[6]  Plaintiff disputes that they were

---

[6] In defendants' Reply Memorandum of Law in Opposition to Plaintiff's Motion for a Default Judgment and In Support of Defendants Alex Shchegol and ASA College Inc.'s Cross-Motion to Dismiss, To Vacate the Default, and For Leave to Respond to the Complaint, filed March 4, 2024 (ECF No. 30) ("Reply Mem."), defendants contend that "the evidence shows that ASA and Shchegol did not learn about the lawsuit until at least May 2023. . . ." (Reply Mem. at 5 (citing Shchegol Aff. ¶¶ 10-13)).  They further concede that thereafter, Shchegol "inadvertently overlooked the lawsuit" for much of 2023 due to the financial issues facing the College.  (Id.)

not properly served and contends that defendants were well aware of the lawsuit prior to the filing of the Complaint. (Pl.'s Opp.[7] at 8).

### 1. Service Upon Shchegol

Plaintiff contends that on or about July 11, 2022, plaintiff mailed a claim letter to defendants, enclosing a copy of the proposed complaint. (Id., Ex. 3). On or about July 27, 2022, the president of ASA, Jose Valencio, contacted plaintiff's counsel in an email to request additional time to respond to the proposed complaint. (Id., Ex. 4). A month later, on or about August 29, 2022,[8] an attorney from Kaufmann, Borgeest, & Ryan, claiming to represent ASA, contacted plaintiff's counsel indicating that her firm was investigating the claims and asking plaintiff's counsel to confirm that nothing had been filed with the EEOC or any other administrative agency. (Id., Ex. 5).

According to plaintiff's counsel, after many email exchanges with defendants' attorneys, suggesting mediation, plaintiff determined in late March 2023 that defendants were "engaging in dilatory tactics." (Pl.'s Opp. at 8-9). Thus, on March 27, 2023, plaintiff filed the Complaint, and then filed the Amended Complaint on April 18, 2023. (Id. at 9). Thereafter, plaintiff made several attempts to serve Shchegol at each of his publicly available residences. (Id. at 11). Specifically, according to the invoices showing service attempts, plaintiff's process server successfully served an individual at 377 Ocean Terrace, Staten Island, New York 10301-4555, on April 13, 2023, but the individual receiving service refused to provide a name. (Id., Ex. 8). On May 2, 2023, the process server again attempted to serve the defendant at "1-377 Ocean Terrace," but was advised that no one by that name lived there. (ECF No. 11, Ex. 6).

---

[7] Citations to "Pl.'s Opp." refer to Plaintiff's Affirmation & Memorandum of Law in Opposition to Defendants' Motion to Dismiss and Vacate, filed February 22, 2024 (ECF No. 29).

[8] Although the date referenced in Plaintiff's Affirmation & Memorandum of Law is August 29, 2023, the email exhibit reflects the date as August 29, 2022. (See Pl.'s Opp., Ex. 5).

On June 27, 2023, plaintiff filed a Motion to extend the time to serve defendant Shchegol, and in a status report to the Court, noted that Shchegol had called counsel and requested an additional 30 days to respond, which counsel agreed to.  (Pl.'s Opp. at 9, ECF No. 11, Ex. 1 at 2).  On July 6, 2023, the process server served defendant at 680 Golden Beach Drive, Golden Beach, Florida 33160-2246.  (Pl.'s Opp., Ex. 8).[9]  Also on July 17, 2023, the process server made additional attempts to serve defendant Shchegol at two locations in Brooklyn:  111 Lawrence Street, Apt. 31, and 151 Lawrence Street.  (Id.)  Finally, on July 24, 2023, the process server served an individual identified as "Christian" at 724 Todt Hill Road, Staten Island, New York 10304-1327.  (Id.)

In moving to vacate the default, defendant Shchegol states that plaintiff attempted to serve him with process on "three separate occasions, none of which was at a place where I was present, reside, do business, or check mail."  (Shchegol Aff. ¶ 2).  With respect to the Golden Beach address, Shchegol concedes that he jointly owns the home with his wife, from whom he is separated, but the home is vacant, and he has not visited it in several years.  (Id.)[10]  He claims that he "did not receive the summons and Complaint as a result of any of the Plaintiff's three attempts to serve [him] with process."  (Id. ¶ 8).

He also denies receiving service at two of the other locations at which plaintiff attempted service.  (Id. ¶ 5-7).  With respect to the 111 Lawrence Street address, defendant contends that he does not live there and has never been associated with that address and "suspect[s]" that the

---

[9] Plaintiff claims that service was also attempted at 19333 Collins Avenue, Apt. 2206, Sunny Isles Beach, Florida 33160-2373.  (Pl.'s Opp. at 12).  Although plaintiff makes this claim of service at 19333 Collins Avenue, it does not appear that an actual proof of service has been filed verifying service at this location.

[10] Defendant notes that in an attempt to serve him at the Golden Beach address, plaintiff's process server "claims to have affixed a copy of the summons and [C]omplaint to the door of a building located at that address after having unsuccessfully attempted, on three prior occasions, to find a person at that location with whom the papers could be left."  (Shchegol Aff. ¶ 3 (citing ECF No. 6)).  According to the process server, he then mailed a copy to the same address.  (Id. (citing ECF No. 17-2)).

plaintiff was attempting to serve him at 151 Lawrence Street, which is the location of his former business.  (Id. ¶ 6).  According to defendant, in April 2023, when plaintiff attempted service at that location, ASA was no longer in business, having closed in or around the first quarter of 2023.  (Id. ¶ 10).  Thus, even if this had been a proper place for service, defendant Shchegol claims that there were no active employees, officers, or board members who had access to that address to review or receive mail.  (Id.)

Finally, with respect to service at the Todt Hill Road address, defendant Shchegol claims that he does not reside there; it is a residence where his wife lives, and he was not there on the date of service, nor does he check mail there or regularly communicate with his wife.  (Id. ¶ 7). He also claims not to know "Christian," the individual who allegedly accepted service.  (Id.)

Defendant does not address the plaintiff's efforts to serve him at the Ocean Terrace or Collins Avenue addresses; he simply states that he did not learn of this action through any of plaintiff's attempts to serve him or ASA.  (Id. ¶¶ 8, 11).  He claims, however, to have received notice – he is unclear when – "when the Plaintiff mailed a copy of the summons and Complaint to me."  (Id. ¶ 12).  He does not state the address to which plaintiff mailed the summons and Complaint that he received.  He simply states that since he did not believe he had been properly served, he did not believe that he was obligated to appear.  (Id.)  He claims, however, that he began searching for counsel, which took some time because "ASA was in extreme financial hardship and had difficulty paying legal fees."  (Id. ¶ 13).[11]

Although the plaintiff has the burden of demonstrating sufficiency of service in the first instance, Lian Qing Yu v. 58 Asian Corp., No. 16-CV-7590 (AJN), 2018 WL 1415214, at *1

---

[11] In defendants' Reply Memorandum of Law, defendant Shchegol denies plaintiff's counsel's assertion that he called plaintiff's counsel in May 2023 to request an extension of time to respond to the Complaint, and, in any event, he contends that such a phone call would be irrelevant to the question of valid service.  (Reply Mem. at 3).

(S.D.N.Y. Mar. 20, 2018) (citing <u>Commer v. McEntee</u>, 283 F. Supp. 2d 993, 997 (S.D.N.Y. 2003)), the New York courts have held that the affidavit of the process server, indicating that the party was properly served, constitutes "prima facie evidence of proper service[,] and the defendant's conclusory denial of receipt of the summons and complaint" has been found insufficient to raise an issue of fact.  <u>Sando Realty Corp. v. Aris</u>, 619 N.Y.S.2d 140, 209 A.D.2d 682 (2d Dep't 1994).  In <u>Degonzague v. Entwistle</u>, No. 5407-09, 3 (N.Y. Sup. Ct., Albany 2009), the process server served the defendants, husband and wife, by providing the husband with two copies of the pleadings at the marital residence, located in Castleton.  In moving to dismiss for lack of personal jurisdiction, the wife claimed that she and her husband were separated, and she provided an address in Albany, where she was residing.  In denying the wife's motion to dismiss, the court held that she had failed to meet her burden of proof:

> The defendant offers little evidence to refute the facts affirmed in the affidavits of the process server.  The defendant claims she is separated from her husband.  The defendant does not establish when she separated from her husband and whether the separation was a trial separation or a legal separation.  The defendant did not deny that 1486 Bame Road, Castleton, New York was the marital residence of her and her husband.  Although the defendant stated that she moved to the City of Albany, she offers no proof indicating when she moved and when she established her alleged new residence.  The defendant failed to offer any proof regarding her alleged change of residence such as notices to the post office regarding her mail, the Department of Motor Vehicles, bank statements, phone or utility bills or the deed from the purchase of a home or a lease.  Under these circumstances, the marital residence remained Gina Entwistle's "usual place of abode" for the purpose of service of process pursuant to [C.P.L.R.] § 308(2).

<u>Id.</u> at 4.

In this case, defendant Shchegol has provided even less information to demonstrate that he does not reside at the location on Todt Hill Road, where he claims his wife resides.  He has not provided any information as to when he and his wife allegedly separated, when he moved out

of the marital home, or even the address where he claims to have been residing at the time of service or where he resides currently. As in the <u>Degonzague</u> case, defendant Shchegol has not provided any evidence, such as a lease or deed for his new residence, postal notices, change of address forms submitted to the DMV, phone or utility bills, etc. In addition, while he challenges plaintiff's efforts to serve him at three locations, he does not address the process server's affidavit of service at two other locations, nor does he address plaintiff's counsel's assertions that over a year before the attempts to serve him were made, plaintiff's counsel was in contact with ASA's president and with an attorney who claimed to represent the defendants.[12]

As noted, defendant Shchegol claims he only learned of the case when plaintiff's counsel mailed him a copy of the pleadings, but he fails to state the address to which the copy was mailed or when he received that mailing. Finally, it is notable that even though he claims to have consulted counsel after learning of the case, it took him months, until February 1, 2024, to move to vacate the defaults that had been entered against defendant ASA on June 29, 2023 and against him personally on October 11, 2023. Although he claims in his Reply Memorandum of Law that he "inadvertently overlooked the lawsuit" due to the financial and regulatory concerns facing ASA at the time (Reply Mem. at 5), he also claims that ASA ceased operations in the first quarter of 2023, and no one was receiving mail at the address on file with the Secretary of State. (Shchegol Aff. ¶¶ 9-10). However, defendant Shchegol does not explain how any "issues" could be resolved on behalf of defendant ASA if there was no longer a viable address for ASA and Shchegol was not at any of the publicly available addresses listed for him.

---

[12] Although the attorney who claimed to represent defendant ASA never explicitly stated that her firm also represented defendant Shchegol individually (<u>see</u> Pl.'s Opp., Exs. 5-6), as the sole shareholder of ASA, it is likely that defendant Shchegol received notice of the lawsuit.

Thus, the Court concludes that not only did plaintiff exercise reasonable diligence in attempting service on defendant Shchegol, see Wells Fargo Bank, N.A. v. Kaul, 120 N.Y.S.3d 95, 97, 180 A.D.3d 956 (2d Dep't 2020), but the Court finds that defendant had actual notice of the lawsuit, see Burda Media, Inc. v. Blumenberg, 2004 WL 1110419, at *6-7, and he has failed to demonstrate that service in this case was deficient.

### 2. Service Upon ASA

With respect to defendant ASA, plaintiff asserts that it was properly served pursuant to New York Civil Practice Laws and Rules Section 311, by delivery of the summons and complaint upon the Secretary of State on April 19, 2023. (Pl.'s Opp. at 12 (citing N.Y. Bus. Corp. Law §306; Exs. 7, 9)). "Service of process upon such corporation shall be complete when the secretary of state is so served." N.Y. Bus. Corp. Law § 306.

Defendants contend that service upon ASA was ineffective because at the time, ASA was out of business and did not have access to the address where the summons and Complaint were delivered. (Defs.' Mem.[13] at 1-2; Shchegol Aff. ¶ 10). According to defendant Shchegol, who alleges he is the sole shareholder of defendant ASA, the Secretary of State had 151 Lawrence Street, Brooklyn, New York 11201, on file as the address for ASA at the time of service in April 2023. (Shchegol Aff. ¶ 9). Defendants contend that due to various regulatory and financial issues, ASA "closed its business in or around the first quarter of 2023." (Id. ¶ 10). Thus, according to defendants, ASA had no employees at 151 Lawrence Street, and no access to the address to receive mail or sort it. (Id.)

---

[13] Citations to "Defs.' Mem." refer to defendants' Memorandum of Law in Opposition to Plaintiff's Motion for a Default Judgment and In Support of Defendants Alex Shchegol and ASA College Inc.'s Cross-Motion to Dismiss, To Vacate the Default, and For Leave to Respond to the Complaint, filed February 1, 2024 (ECF No. 27-2).

Although the plaintiff primarily carries the burden of proving the defendant has been properly served, Lian Qing Yu v. 58 Asian Corp., 2018 WL 1415214, at *1, a basic level of proof from the defendant is needed to establish that he did not deliberately avoid service. In Criollo v. NY Fine Interiors Inc., for example, while the defendant did not provide any concrete evidence that he had not received the summons and complaint, he did provide a specific date when he "first became aware of the lawsuit," a date that fell after service was purportedly effected. 19 CV 5974, 2021 WL 1200318, at *7 (E.D.N.Y. March 3, 2021). Moreover, the plaintiff in Criollo claimed that he "informed his attorney . . . within five minutes of finding the documents" concerning the lawsuit. Id. Thus, the Court held that, due to his prompt action with respect to finding an attorney once he was made aware of the lawsuit, and the timing of service relative to his claims about moving residences, he did not willfully default. Id. at *10; see also Aetna Life Insurance Co. v. David Licht, No. 03 CV 6764, 2004 WL 2389824 at *4, *2 (S.D.N.Y. Oct. 25, 2004) (holding that the defendant did not willfully default because the defendant gave specific months and dates during which he or his family members were "unexpected[ly]" ill, which prevented him from responding to the plaintiff's complaint on time).

In this case, defendants have not provided any evidence to verify the timing of ASA's closure, nor does the Shchegol Affidavit state a specific date when ASA closed, speculating that it closed sometime in the first quarter of 2023. (Shchegol Aff. ¶ 10). While the Shchegol Affidavit states that "on March 1, 2023, ASA lost its MSCHE accreditation, and shortly thereafter (in late March of 2023), the Board of Trustees made the unfortunate decision to suspend ASA's business operations indefinitely" (Shchegol Aff. ¶¶ 33-34), defendants never provide an exact date for that suspension, nor do they specify a date after which ASA's employees were no longer able to access the Brooklyn address where service was to be

16

effectuated for ASA.  Defendant Shchegol also initially claimed that he was "unsure of the precise date" when he "received notice of the lawsuit" (Shchegol Aff. ¶ 12), but later claimed that defendants did not receive notice until "at least May 2023."  (Reply Mem. at 5).  The Shchegol Affidavit also does not specify when defendant Shchegol "began searching for counsel" for ASA nor does it indicate how long the search took, beyond vaguely stating that the search "took time" due to defendant ASA's "extreme financial hardship" and "difficulty paying legal fees."  (Shchegol Aff. ¶ 13).  Furthermore, as noted previously by the Court, defendants do not address plaintiff's contention that defendant ASA retained counsel in 2022 in relation to this matter (Pl.'s Opp. at 8, Exs. 4, 5), and they deny that defendant Shchegol called plaintiff's counsel to request additional time to respond to the Complaint in May of 2023.  (Reply Mem. at 3).

Thus, defendants' lack of specificity with respect to receiving notice of the lawsuit and the closure of ASA falls short of establishing that ASA closed before service was effected, and that defendants did not intentionally avoid service.

Apart from defendants' failure to provide any evidence regarding the timing of the closure of the college, the New York Secretary of State's records indicate that ASA is still listed as an active corporation.[14]  If a business closes prior to service but does not notify the Secretary of State of its closure, delivery of summons and complaint to the Secretary of State still constitutes sufficient service on a corporation.  See Logan v. World Luxury Cars, Inc., No. 15 CV 00248, 2022 WL 2466834, at *5 (E.D.N.Y. March 30, 2022) (holding that although defendants claimed their business was no longer in operation, its active status with the Department of State meant that "the Secretary of State had the correct address for an existing

---

[14] The Court last accessed said records on August 26, 2024.  New York Dep't of State, Div. of Corps., https://apps.dos.ny.gov/publicInquiry/EntityDisplay.

corporation, and there is no question that the summons and complaint was sent to and properly served on the Corporate Defendant"); see also Andrey Nevelskiy v. Advanced Professional Group, Inc., No. 23 CV 2364, 2024 WL 2745190, at *7 (E.D.N.Y. May 29, 2024) (ruling that although defendant is "a Wyoming corporation," its registration with the New York Department of State means it was "properly served" by mail to the New York address listed therein).

Defendants fail to provide any evidence to suggest that the Secretary of State was informed of ASA's purported closure after the school lost its accreditation. Therefore, irrespective of whether ASA was closed at the time of service, delivery of the summons and complaint to the Secretary of State sufficiently constitutes service on defendant ASA.

### 3.  Defendants' Motion to Dismiss the Complaint as to Defendant Shchegol

In defendants' Cross Motion to vacate the entry of default, they also move to dismiss the Complaint as to defendant Shchegol.  They contend that because plaintiff's attempt to serve defendant Shchegol never resulted in the summons and Complaint actually being "delivered to him personally, and none of the addresses where service was attempted [were] his actual place of business, dwelling place, or any place he spends time[,]" service against him is "defective. . . making the entry of default 'void' as to him and requiring that the Complaint be dismissed as against him as a matter of law."  (Defs.' Mem. at 1).

Since the Court has found that service was proper as to defendant Shchegol, the Court respectfully recommends that defendants' Motion to dismiss the Complaint as to defendant Shchegol be denied.

## II.  Good Cause to Vacate Default

Apart from challenging the sufficiency of service, defendants also contend that there is good cause to vacate the default.  (Defs.' Mem. at 12; Reply Mem. at 4).  Defendants contend

that their default was not willful, that they have a meritorious defense to the action, and that plaintiff will not suffer any prejudice if the action proceeds on the merits. (Defs.' Mem. at 12-23; Reply Mem. at 4-10).

A.  Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for an entry of default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. See id. Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b).

Pursuant to Rule 55(c), the Court may set aside an entry of default for good cause. The standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the "excusable neglect" standard for setting aside a default judgment by a motion pursuant to Rule 60(b). Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981). The main factors for the Court to consider in determining the appropriateness of relieving a party of a default are whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented. Enron Oil Corp. v. Diakuhara, 10 F.3d at 96; Meehan v. Snow, 652 F.2d at 277. Other relevant equitable factors may also be considered, such as "whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." Id. The party seeking relief from an entry of

default bears the burden of proof.  Aetna Life Ins. Co. v. Licht, 2004 WL 2389824, at *3 (quoting In re Martin-Trigona, 763 F.2d 503, 505 n.2 (2d Cir. 1985)).  Defaults are not favored, however, and "doubts are to be resolved in favor of a trial on the merits."  Meehan v. Snow, 652 F.2d at 277.

      B.  Analysis

        1.  Willfulness

The test for willfulness is not simply whether a defendant was properly served and failed to respond.  Instead, the relevant inquiry for determining willfulness relates to the defaulting party's actions "after it became aware of the existence of the litigation or entry of default."  Prestige Capital Corp. v. Fuber LLC, No. 16 CV 9577, 2017 WL 2558803, at *2 (S.D.N.Y. June 5, 2017) (citing Swarna v. Al-Awadi, 622 F.3d 123, 142-43 (2d Cir. 2010)); In re FKF 3, LLC, v. Messer, 501 B.R. 491, 501-03 (S.D.N.Y. 2013) (finding that despite the defaulting parties' admittance of awareness of the action, proper service, and the defaulting parties' failure to timely respond to the motion for default judgment, their actions, "while negligent, [did] not rise to the level of willfulness").

Willfulness is "more than mere[] neglect or carelessness."  Aetna Life Ins. Co. v. Licht, 2004 WL 2389824, at *4 (finding defendant's explanations for letting the case "languish" plausible and acceptable); see also Swarna v. Al-Awadi, 622 F.3d at 143 (holding that willfulness "requires something more than mere negligence, such as egregious or deliberate conduct") (internal quotation marks and citation omitted).  A finding of willfulness does not require that the default occurred due to bad faith, but the default must be the "deliberate and intended consequence of movant's actions."  Aetna Life Ins. Co. v. Licht, 2004 WL 2389824, at *4 (citing Gucci Am., Inc. v. Gold Ctr. Jewelry, 158 F.3d 631, 635 (2d Cir. 1998)).  "Conduct may be found to be willful where it is egregious, not satisfactorily explained, or is rationalized by

flimsy excuse."  Id. See also Kuklachev v. Gelfman, No. 08 CV 2214, 2009 WL 497576, at *3 (E.D.N.Y. Feb. 26, 2009) (finding willfulness where defendants "took a calculated risk that the case would be resolved in their favor" and pursued insurance coverage and dismissal of plaintiffs' claim in lieu of answering another defendant's cross claims); S.E.C. v. McNulty, 137 F.3d 732, 739 (2d Cir. 1998) (finding willfulness where no explanation of defendant's conduct was provided, and defendant's counsel acknowledged defendant's "outright disregard" towards warnings of default).

Defendants contend that their default was not willful because they lacked notice of the lawsuit until May 2023 and lacked the money to retain counsel.  (Defs. Reply at 4-5).  Further, defendant Shchegol believed that he had not properly been served and therefore had no obligation to respond.  (Id. at 5).  In their Reply Memorandum of Law, defendants add that Shchegol "inadvertently overlooked the lawsuit for much of 2023 amid the extensive financial and regulatory hardships facing ASA."  (Reply Mem. at 5).

Even accepting as true defendants' explanation that ASA did not receive notice as a result of service by the Secretary of State and that Shchegol did not receive the Complaint served upon his wife's residence, defendants have not provided a satisfactory explanation for why no action was taken for almost 10 months, from May 2023 – when Shchegol concedes he learned about the lawsuit – until February 2024, when the Cross Motion to vacate the default was finally filed. During this time, Shchegol claims he was seeking an attorney for ASA but provides no information as to his efforts to find counsel or when counsel was actually retained.  The Court finds defendant Shchegol's excuse that he "inadvertently overlooked" the need to respond as not credible.  As previously noted, defendant Shchegol also fails to address plaintiff's contention that defendant ASA had counsel in 2022 when the proposed complaint was first brought to the

attention of the President of ASA, and he does not explain why that counsel was not consulted about the pitfalls of not responding to the Complaint.    Moreover, even after the plaintiff moved for default on December 7, 2023, defendants waited almost two months to file the Cross Motion to vacate the default.

All said, defendants waited more than nine months after they concede having knowledge of the action to file the Motion to vacate the entry of default.  The "outright disregard" shown by defendants in this case supports a finding that the default was willful.  See S.E.C. v. McNulty, 137 F.3d at 739; see also Dixon v. Ragland, No. 03 CV 0826, 2005 WL 2649484, at *2 (S.D.N.Y. Oct. 14, 2005) (finding willfulness where defendants offered no explanation for their failure to respond to the complaint); Dominguez v. United States, 583 F.2d 615, 618 (2d Cir. 1978) (finding that counsel's 10-month delay in seeking to vacate a dismissal could not be characterized as excusable neglect), cert. denied, 439 U.S. 1117, 99 S. Ct. 1023 (1979).

If willfulness were the only factor to be considered in determining whether to vacate a default, the Court would have no hesitation in recommending that the Motion to vacate be denied.  However, the Court is constrained to consider the two remaining factors:  whether defendant has made a showing that it has a meritorious defense to the claims and whether there will be prejudice to plaintiff if the default is vacated.

2.  Meritorious Defense

To demonstrate a sufficiently meritorious defense, "the defendant need not establish his defense conclusively. . . but he must present evidence of facts that, if proven at trial, would constitute a complete defense."  S.E.C. v. McNulty, 137 F.3d at 740 (internal quotation marks and citations omitted).  In other words, the defendant must show that there is some determination to be made by the factfinder.  American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996).  Although the proffered defense "need not be ultimately persuasive at this stage,"

id., "defendants cannot simply assert in a conclusory fashion that they would prevail at trial."

Aetna Life Ins. Co. v. Licht, 2004 WL 2389824, at *4.  Moreover, the defendant "need only

establish a defense to at least one claim – not every claim pled in the complaint."  Wildflower +

Co. v. Mood Apparel, Ltd., 338 F.R.D. 192, 198 (S.D.N.Y. 2021).

          a.    Plaintiff's Title VII Claims

In asserting a defense to plaintiff's Title VII claims, defendants note that because plaintiff

is asserting a hostile work environment theory, there are two affirmative defenses that they can

raise in opposition:  (1) that the employer exercised reasonable care to prevent and promptly

correct any harassing behavior, and (2) that the employee "unreasonably" failed to take

advantage of any preventive or corrective opportunities offered by the employer.  (Defs.' Mem.

at 14-15 (citing Miller v. New York State Police, No. 20-3976, 2022 WL 1133010, at *3 (2d Cir.

Apr. 18, 2022))).

Defendants contend that during the period of alleged harassment, they had "extensive

anti-harassment policies and procedures in place," employed a Title IX officer, and had a human

resources department to hear complaints, all of which plaintiff acknowledges.  (Id. at 15 (citing

Am. Compl. ¶¶ 62, 77, 79-80)).  Defendants also contend that plaintiff failed to take advantage

of these resources and did not report the harassment from defendant Carthan until June 20, 2022,

"despite allegedly having endured two distinct periods of harassment by Carthan" from 2011 to

2018 and after October 2021.  (Id.).  Moreover, once she did report it, ASA took steps to

investigate and prevent further harassment.  (Id. at 15-16).  Defendants contend that at trial, they

will be able to assert the Faragher/Ellerth[15] defense based on their actions immediately following

---

[15] See Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275 (1998); Burlington Industries, Inc. v. Ellerth, 542 U.S. 742, 118 S. Ct. 2257 (1998).

plaintiff's complaint to the human resources department.  (Id. at 16 (citing cases)).  This defense, if established at trial, would constitute a complete defense to the Title VII hostile work environment claims.[16]

Defendants also contend that with respect to plaintiff's Title VII retaliation claim, she will not be able to establish the necessary element of an adverse employment action.  (Id. at 17); (see Collymore v. City of New York, No. 16 CV 8270, 2023 WL 5834784, at *3 (S.D.N.Y. Sept. 8, 2023) (listing the four elements a plaintiff must demonstrate: (1) plaintiff employee participated in a protected activity; (2) defendant knew of the activity; (3) plaintiff suffered an adverse employment action; and (4) a causal connection between the protected activity and the adverse action).  Adverse actions can include termination, demotion with decrease in salary, diminished responsibilities, or loss of benefits, see Rivera v. New York City Dept. of Edu., No. 21 CV 6134, 2023 WL 2563665, at * 18 (E.D.N.Y. Feb. 3, 2023) – none of which appear to be alleged in the Complaint.  To the extent that plaintiff alleges that her hours were reduced, defendants contend that she was a salaried employee, not an hourly one, and her complaint about being denied permission to work from home is not true.  (Id. at 17-18).

Thus, there appear to be several issues of fact that, if found in defendants' favor, may provide a defense to the plaintiff's Title VII hostile work environment and retaliation claims.

### b.    Plaintiff's Title IX Claims

Defendants also argue that they have a meritorious defense to plaintiff's Title IX claims for the same reasons that they have a meritorious defense to her Title VII claims.  They also

---

[16] Defendants contend that they also intend to argue that plaintiff cannot establish a hostile work environment, many of her claims are untimely, and plaintiff has failed to exhaust administrative remedies.  (Defs.' Mem. at 16).

argue that there is no private right of action under Title IX.  (Defs.' Mem. at 18 (citing Torres v. Pisano, 116 F.3d 625, 630 n.3 (2d Cir. 1997))).

Plaintiff disputes this assertion, citing the Supreme Court's decision in Cannon v. University of Chicago, 441 U.S. 677, 99 S. Ct. 1946 (1979), which held that an individual has a private right of action under Title IX.  (Pl.'s Opp. at 15).  Moreover, plaintiff disputes defendants' claimed defenses, noting that here, the defendants hired a "sexual predator to continue with his sexual practices."  (Id. at 15-16).

Again, there appear to be factual issues relating to plaintiff's claims and the extent of defendants' knowledge that could provide a defense to the Title IX claim.

### c.    Plaintiff's NYSHRL and NYCHRL Claims

As for plaintiff's state law claims, defendants assert that plaintiff cannot prevail on a claim of discrimination against either defendant Shchegol or defendant ASA because she does not allege that they engaged in any discriminatory acts; the allegations relate only to the conduct of defendant Carthan.  (Defs.' Mem. at 19).  Citing the New York Court of Appeals' decision in Doe v. Bloomberg, defendants contend that the only way an employer can be held liable under the NYSHRL for discrimination is if "'the employer became a party to it by encouraging, condoning, or approving it.'"  (Id. (quoting 36 N.Y.3d 450, 455, 143 N.Y.S.3d 286, 289 (2021))).  Defendants assert that not only did they not know about the alleged discrimination before plaintiff reported it in June 2022, but ASA promptly investigated and took corrective action.  (Id. at 20).  Moreover, because retaliation claims under federal and New York state law are governed by the same standards, defendants contend that plaintiff's NYSHRL retaliation claim also fails.  (Id.)

In addition, defendants contend that while the NYCHRL allows claims to be brought against an employer, the definition of "employer" does not include individuals such as defendant

Shchegol as a shareholder of ASA.  (Defs.' Mem. at 21 (citing <u>Doe v. Bloomberg</u>, 36 N.Y.3d at

459)).  Thus, defendants argue that this is a complete defense for Shchegol under the NYCHRL.

(<u>Id.</u>)  As for ASA, defendants contend that plaintiff will be unable to establish any "unwanted

gender-based conduct. . .beyond 'petty slights and trivial inconvenience.'"  (<u>Id.</u> at 22 (citing

<u>Livingston v. City of New York</u>, 563 F. Supp. 3d 201, 252 (S.D.N.Y. 2021))).

 In response to defendants' arguments, plaintiff disputes defendants' claimed lack of

knowledge based upon "DJ's" prior behavior and that Shchegol "participated in the sexual

harassment by re-hiring DJ"[17] after he had been terminated.  (Pl.'s Opp. at 14).

 For the same reasons set forth above, disputed factual issues may provide a defense not

only to plaintiff's Title VII claims but to her NYSHRL and NYCHRL claims as well.

 A review of the respective arguments of the parties demonstrates that many of the

defenses raised by defendants ASA and Shchegol hinge on factual determinations of disputed

facts.  Bearing in mind the preference of the Second Circuit to decide cases on their merits, <u>see</u>

<u>Meehan v. Snow</u>, 652 F.2d at 277, the Court finds that, if true, some of defendants' asserted

defenses may ultimately be "meritorious."

  3. <u>Undue Prejudice</u>

 Although defendants' failure to act diligently has delayed the resolution of this case,

plaintiff has not demonstrated that setting aside the notation of default against defendants

Shchegol and ASA will cause the loss of evidence, create increased difficulties for discovery, or

provide greater opportunity for fraud and collusion.  <u>See</u> <u>Ward v. Ramkalawan</u>, No. 11 CV 4295,

2013 WL 1149108, at *5 (E.D.N.Y. Feb. 11, 2013), <u>report and recommendation adopted</u>, 2013

---

[17] As noted in n.3, *supra*, it is unclear whether plaintiff's references to "DJ" refer to defendant Duwayne Carthan or someone else.

WL 1149068 (E.D.N.Y. Mar. 19, 2013) (finding that "delay alone is not a sufficient basis for establishing prejudice").

Accordingly, the Court finds that granting defendants' Motion will not cause undue prejudice to the plaintiff.

In summary, the Court finds that although it appears that defendants were properly served and their default was willful, defendants have raised potential meritorious defenses to some, if not all, of plaintiff's claims. Given that vacatur of the notation of default will not unduly prejudice the plaintiff, and despite the egregiousness of defendants' conduct in this case in failing to act diligently in responding to the Complaint, the Second Circuit's strong preference for disposition on the merits and resolving all doubts in favor of the movant impels the Court, with some reluctance, to respectfully recommend that defendants' Motion to vacate the notation of default be granted.[18] However, it should be noted that if defendants fail to act diligently in the future, the Court will recommend sanctions.

<u>MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANT CARTHAN</u>

Plaintiff has also moved for default judgment against defendant Carthan, who has not appeared or responded to the Motion for default judgment.

The Second Circuit has warned that default judgment is an extreme remedy that should be used only when the need to move a case forward expeditiously trumps a party's right to be heard before a court of law. See <u>Meehan v. Snow</u>, 652 F.2d at 277. While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that courts must

---

[18] An additional consideration is the need for plaintiff to file a corrected amended complaint and to re-serve all the defendants as discussed *infra*.

balance that interest with their responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.

Although defendants Shchegol and ASA have appeared and moved to vacate the default, defendant Carthan has not appeared and the Motion for default judgment against him is extant. Thus, the Court must consider whether entering a default judgment against Carthan as one of three defendants is premature at this point. See Bleecker v. Zetian Sys., Inc., No. 12 CV 2151, 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013) (citing Chloe v. Zarafshan, 06 CV 03140, 2009 WL 2956827, at *4 (S.D.N.Y. Sept. 15, 2009)).

Before entering a final judgment as to some of the parties in an action but not all, the Court must "expressly" determine that there is no reason to delay judgment against those defaulting parties. Fed. R. Civ. P. 54(b). There are no "fixed criteria" guiding the application of this rule. Mitchell v. Lyons Pro. Servs., Inc., 727 F. Supp. 2d 116, 119 (E.D.N.Y. 2010) (citing Curtiss–Wright Corp. v. General Elec. Co., 446 U.S. 1, 100 S. Ct. 1460 (1980)). Rather, "[t]he decision of whether to enter a final judgment against some but fewer than all of the parties in an action is left to the sound discretion of the district court." Abbott Lab'ys v. Adelphia Supply USA, No. 15 CV 5826, 2020 WL 7643213, at *2 (E.D.N.Y. Dec. 23, 2020) (citing Bleecker v. Zetian Sys., Inc., 2013 WL 5951162, at *6). However, "default judgment cannot be issued where the relief requested would prejudice actively litigating defendants." Knowles-Carter v. Feyonce, Inc., No. 16 CV 2532, 2017 WL 11567528, at *5 (S.D.N.Y. Sept. 23, 2017).

When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability, but not as to damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080, 113 S. Ct. 1049 (1993). Courts in this Circuit have "consistently

delayed" rendering default judgments "even where a plaintiff seeks joint and several liability in order to avoid the problems of dealing with inconsistent damage determinations." Unitrans Colsolidated, Inc. v. Classic Closeouts, LLC, 09 CV 2098, 2010 WL 1265206, at *1 (E.D.N.Y. Mar. 31, 2010) (internal citations and quotations omitted); Mitchell v. Lyons Pro. Servs., Inc., 727 F. Supp. 2d at 119 (citing Frow v. De La Vega, 82 U.S. 552 (1872)); see also Lemache v. Tunnel Taxi Mgmt., LLC, 354 F. Supp. 3d 149, 152 (E.D.N.Y. 2019); Abbott Lab'ys v. Adelphia Supply USA, 2020 WL 7643213, at *3 (quoting Harvey v. Home Savers Consulting Corp., No. 07 CV 2645, 2008 WL 724152, at *1 (E.D.N.Y. Mar. 17, 2008)) (collecting cases); International Gemmological Inst., Inc. v. Rafaeil, No. 05 CV 2395, 2005 WL 3880222, at *2 (S.D.N.Y. Aug. 17, 2005), report and recommendation adopted, No. 05 CV 2395, 2006 WL 739822 (S.D.N.Y. Mar. 21, 2006) (collecting cases).

Here, plaintiff seeks entry of a default judgment finding defendants ASA, Shchegol, and Carthan jointly and severally liable for compensatory damages, punitive damages, attorney's fees, and litigation expenses and costs, stemming from alleged violations of the various federal, state, and local civil rights laws described above. (See Pl.'s Opp. at 5-6). If the Court were to grant plaintiff's Motion only as to defendant Carthan and award damages against Carthan, the judgment could adversely prejudice defendants ASA and Shchegol, who have appeared to contest plaintiff's position on their liability for the rights violations pled in the Complaint. See Falls Lake Nat'l Ins. Co. v. Nexus Builders Corp., No. 21 CV 1403, 2022 WL 992714, at *5 (S.D.N.Y. Mar. 31, 2022); see also Century Sur. Co. v. Whispers Inn Lounge, Inc., No. 13 CV 9049, 2014 WL 8392302, at *1 (S.D.N.Y. Dec. 15, 2014) (denying default judgment without prejudice, where "[g]ranting [plaintiff's] requested relief and declaring that the underlying action

is not covered. . . would, in effect, decide the case for [the co-defendant], even though it disputes [plaintiff's] claims").

Apart from the potential prejudice to defendants ASA and Shchegol, if this Court were to proceed to a damages inquest against defendant Carthan, there are several issues with the Complaint that need to be clarified before a default judgment can be rendered.  As noted *supra* at n.3, in alleging claims against defendant Carthan in the Amended Complaint, plaintiff has used the defendant's initials – "DC" – in describing conduct allegedly attributable to him.  (See Am. Compl. ¶ 17).  However, beginning in paragraph 57 and on, the allegations in the Complaint refer to an individual designated as "DJ."  The plaintiff does not define "DJ" nor does plaintiff identify another individual who is alleged to be involved in the discriminatory, harassing conduct alleged in the Complaint.  While it may be that "DJ" was really meant to refer to defendant Carthan, absent clarification as to whether the references to "DJ" were meant to refer to "DC," the Court cannot consider these allegations in assessing defendant Carthan's liability.

A similar, but perhaps less significant, issue relates to paragraph 64 of the Amended Complaint and the allegation that "ALEX" resigned his post.  (See Am. Compl. ¶ 64 (alleging: "Upon information and belief and as per the media organizations, ALEX, 'accused of using his perch to sexually abuse vulnerable students has resigned from his post for the second time in the last four years following a Daily News expose'")).  Although the Complaint defines "ALEX" as defendant Shchegol (id. ¶ 10), it appears that plaintiff may be intending to refer to defendant Carthan and not Shchegol, since this is the only allegation accusing Shchegol of directly engaging in harassing conduct.  Again, before determining whether a default judgment should be entered against defendant Carthan, and before defendant Shchegol can responsibly enter an Answer to the allegations, plaintiff needs to clarify these issues.

Accordingly, the Court respectfully recommends that plaintiff's Motion for default judgment against Duwayne Carthan be denied without prejudice and with leave to refile once plaintiff's claims against ASA College, Inc. and Alex Shchegol are resolved and the risk of prejudice is obviated.

It is further recommended that plaintiff be granted leave to file a motion for an amended complaint, given the need to clarify the discrepancies in the Amended Complaint identified herein and plaintiff's own request for leave to amend to add claims "including but not limited to adding an aiding and abetting claim against [defendant Shchegol] under [t]he New York City Administrative Code." (Pl.'s Opp. at 17).

If the District Court adopts this Court's Report and Recommendation, it is further recommended that plaintiff be directed to serve her proposed amended complaint and appropriate motion papers as required by Local Civil Rule 7 within 2 weeks of the Order adopting the Report and Recommendation; that defendants be given 2 weeks to oppose the motion to amend; and that plaintiff be given one week to reply.

<u>CONCLUSION</u>

Accordingly, the Court respectfully recommends that the District Court: (1) vacate the Clerk of Court's entry of default against defendants ASA and Shchegol pursuant to Rule 55(c) of the Federal Rules of Civil Procedure; (2) deny defendants' Motion to dismiss the Complaint as to defendant Shchegol; (3) deny plaintiff's Motion for default judgment against defendant Carthan without prejudice; (4) grant plaintiff leave to move to amend her Complaint; and (5) grant defendants Shchegol and ASA leave to Answer or otherwise respond to the Complaint.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); <u>see also</u> Fed. R. Civ. P. 6(a) (providing the

method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      August 29, 2024

*Cheryl L. Pollak*

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York